I hope your phone is off. I thought I turned it off. Apparently, I failed miserably. I've been having some problems with it. I think it's time to get a new one. And I apologize for that. Please proceed. Thanks. My name is Steve Harfinis. I represent Emil Cangro in this case. In this matter, the district court issued two orders. The first granting the city's motion to dismiss under Rule 12b-6 the entirety of the complaint and then permitting us to submit an amended complaint. Which the subsequent order determined that it was futile under Rule 15 and maintained a dismissal. The problem with the district court's order in this particular case is it violates three of this court's precedents with regard to pleadings. The first is, it appears to have been analyzing the complaint under a Rule 9 standard as opposed to a Rule 8 standard post-Iqbal and the plausible — and I say this word all incorrectly all the time — the plausibility standard. That's the first issue. And the second thing is that the district court's decision seems to have been requiring the plaintiff to plead a prima facie case, which is an evidentiary — as this Court has repeatedly said — is an evidentiary standard, not a pleading standard. So what was Mr. Cangro required to plead? This Court dealt with that issue in a case called Bench back in 2021. Plausibility doesn't mean that you have to cite every single fact. You have to just cite enough facts in the complaint to take the complaint from something that's conceivable to plausible. Let's start with what's the adverse employment action? Okay. So the district court said there was none. The adverse employment action is threefold. The first is that Mr. Cangro suffered from — excuse me, I got a little bit of a cold — suffered from an asthma attacks, and prior to his being denied this accommodation, had been previously given it. So — Yeah. So let's specify exactly what the adverse employment action is in that case. In that particular case, it's — It was — The denial of the extension of that. Well, and it was given to him after COVID as well, and as the complaint lays out in pretty excruciating detail from paragraphs 20 to paragraphs 34. That's the first adverse employment action. The second adverse employment action is denying him — excuse me — is the — Sorry, just so I understand the timeframe, did he claim disability due to COVID? I thought he — No. That was before. That's correct. So he had — he's had COPD for quite some time. So then what's the theory that that denial of the accommodation after COVID was somehow disability discrimination? Well, the theory is, is that they acknowledged after COVID that he had a disability that allowed him to work for — or the — excuse me — after COVID — during COVID, it was from the Staten Island office and at home. The post-COVID was the EEO office, which is the city office itself, allowed him to work multiple days. I think it was two days initially from home and three days in the office. And then they subsequently took that back. They only gave it to him for a short period of time in which they said that that type of accommodation had to be only temporary under city regulations. And that was not true. And that's pled in the complaint that it was not true. So that's the — that's the first core of the Adverse Employment Action. The second is, is that they — when his supervisor, Mr. Adlerberg, indicated to him that he was — as he was going through his EEOC proceedings, that they had opened a DOI investigation into him. Now, that goes to both the retaliation claim and the Adverse Employment Action portion with regard to the failure to accommodate and the discrimination claim. With regard to the failure to accommodate claim, that one's an easier claim since they had previously accommodated him. And once they had previously accommodated him, it's difficult for them to come back and say, well, we're not going to give you that accommodation, particularly when they're — when the complaint alleges that their basis is false, that they did — that they had the authority to accommodate him. The allegations with regard to accommodation post-Mulder, the Supreme Court's case in Muldrow, don't have — at the completing stage, don't necessarily have to be significant. They just have to basically cross a line from conceivable to plausible, whatever that necessarily means. I think it depends on an individualized case. In this particular case, because he had been accommodated previously post-COVID, he — it clearly became plausible for them to accommodate him again. Am I — am I right in reading your complaint that his — the essential functions of his job as a principal administrative associate, so I hear you on what you need to and what you don't need to plead necessarily to make that a prima facie case in light of our own case law post-Trombley and Iqbal, but paragraph 14, it says he answers e-mails. Is that an essential function? That is an essential function. Hard mail — and hard mail correspondence. He answers telephone inquiries? Correct. He responds to — I don't even know — Seibel — Seibel service requests? It's a Seibel service. Seibel service request, that's an essential function? Those are all essential functions. And he works on special projects for the Division of External Affairs. That's correct. Correct. So those are all essential job functions. Yeah. And, Judge, you know, this Court's case in — this Court has issued multiple decisions in this area. I see my — my — Oh, go ahead. It has basically said — Yellow light means you get to — I got two more minutes. The obligation to — I think if I'm quoting the Court's opinions correctly, and I think I am, that at the pleading stage, you do — with regard to essential functions, you do not have to exhaustively plead what all the job — all the job functions necessarily are. But you did it here. I'm sorry? You seem to have done it here. I thought we did. That's why I was — I actually, when I was reading the decision, I thought this was a — What is a Seibel service request? It's some type of — it's a form request that the Department gets. And I'm not intimately familiar with it at this point. Yeah, but is it paperwork? Is it — It's paperwork and telephone calls. See, here's the problem with the — with the district court's order that says we didn't explain what he had to do in terms of his essential functions. During COVID, he did all those essential functions from home for over a year period. So it's — he was obviously capable of doing them because — You say he did. Correct. So I'm looking at paragraph 17. Mr. Kangaroo can perform all essential job functions remotely from his home.  Where does it say that he did all of those essential functions that you acknowledge are essential job functions and describe in paragraph 14? Where does he say that he did? I believe in the — when we get into paragraph 20 through 34, we talk about what he was doing during the COVID period. He was doing all those same functions during the COVID period from home. So maybe the plaining could have been a little more — I'm asking you where. Point me to that. I mean, in any event, I'm not sure it's correct as a matter of law that just because somebody was doing a job during COVID remotely that that satisfies that that is a combination by which they can do their essential job functions. It's a fact that — I would agree with that point. I think that in and of itself, it would not be enough. I think — but it's — as the — as the courts have said with regard to these issues, it's really not an issue that's really ripe for adjudication on a 12b6 motion. It's really something that would have to be fleshed out at — during discovery. The point is, is that if he could do it during COVID and was doing them, it's certainly — it's enough to raise an inference that he — that it would be possible that he could do it, especially if he pleads that he necessarily could. I would make one last point with regard to — two last points. With regard to the retaliation claim, the fact that the supervisor subsequently said, well, I was mistaken about a DOI investigation, this Court has multiple precedents that say that that's — that doesn't eliminate the possibility of retaliation because it's an — what we're looking at is the effect on the employee, what his mind was at that particular time. The city claims that, well, there's no evidence in the complaint that this Mr. Adlerberg knew that — about the — excuse me, about the DOI investigation or the rumor. There's the government — the cases talk about that one member of the government is implied to know everything else happens. Finally, the district court dismissed the New York City human rights law claim. It should not have done that. Under 1367, it should have dismissed it without prejudice. And it has a completely different standard. The burden is on the — on the city to prove that — that Mr. Kangro could not do his job with an accommodation. That would be an — that's an affirmative defense, and it was nowhere adjudicated in the — in this motion. So you reserved some time for rebuttal. I did. We'll hear from the city. Good morning, Your Honors. May it please the Court, Janet Zalian for the city. This is essentially an argument that he should be granted a fully remote work accommodation. That's what's at issue here because the proposed — the requested in-office work at the Staten Island Business Center is a place where his division doesn't exist. How about — how about home? Isn't it — isn't there an issue before us that he was denied a request for an accommodation by working at home at least some number of days? Well, he was request — he was granted at first three days a week at home and — and then two days a week when everyone else was getting — also city employees were getting an opportunity to work from home two days a week. But the question is, the — there is a list in the complaint of what the duties are, and the allegation — and remember, it — it is a plausibility standard that he has to meet. The allegation that he can do the essential functions from home or — or remotely from the Staten Island office, that — that they — it's because a couple of these functions were done — were done during COVID. They were modified. Well, they were modified for everybody during COVID. And that would not satisfy a plausible claim that he could continue into the time — into 2023. You mean the functions were — when you say they were modified, you mean the functions were modified? Well, the way things were done, that everybody was working from home. For instance, there's no indication what special projects are, that they could be done entirely remotely, that things have not changed. And are you saying that as a matter of pleading, he should have — having listed the essential job functions in paragraph 14 of the complaint, he should have then said more specifically that he could perform each one of those essential job functions working from home? Well, he should have — because he has to allege facts to create a plausible claim, to sort of fill in the gaps here, that he should have said that — he should have said that apart from COVID, because what he's giving the impression here, the only inference you can take from these allegations, is that during COVID, some things were done. He also says that there's no in-person meetings. That is not a plausible claim for, in general, to rely on a COVID restriction now, because things have reopened. And we've indicated that. Right. And I want to also point out, with regard to his claims about disability discrimination itself, there's only one fact that's pled in the complaint that makes any reference to disability discrimination. And that would be the manager, Mr. Adlerberg, who initially supported the accommodation that was offered for him to get his own room at 1 Center Street. And you can see the email in the appendix that says, I'm setting up your room. I'm arranging for that. So he's initially supporting the reasonable accommodation. And then he's reporting a rumor that he then apologizes for. There is no consequence to this rumor. There's nothing about the — the question in retaliation is, is there something that would deter somebody if somebody makes a mistaken remark? Or — and in terms of indicating for discrimination purposes, whether there's intentional discrimination here. There is nothing — May I return to the — may I return to the failure to accommodate claim? Right. First the ADA claim. We'll get to the New York City claim. So is it the city's position — do you agree that he did not have to list the essential functions of the job? Well, he has to plead — On a motion to dismiss. He did not have to plead that. Well, he has to plead that he can do the essential functions of the job. Well, he did — he pleads that. He says he can perform the essential functions of the job. But he says that basically it's because there were COVID restrictions that — What would happen here is — So you want us to read paragraph 17? Since the COVID-19 pandemic, the new policies and procedures implemented aviated the need for Mr. Kangaroo to have a physical presence at the office. He can perform all essential job functions remotely from his home. You want us to read that as inferring that it's because he was able to do it during COVID that he can do it now? That's what he seems to be saying. And the other problem would be, Your Honor, that if his saying that he can perform all his functions from home and then not making any reference to them, as you said, not listing them, would mean that he would have the opportunity to do what Iqbal actually says he can't do, which is to simply make a statement with no factual allegation attached to it. What's odd about that, and maybe you're right, maybe you're wrong, but what's odd about that is that we've said in other contexts, civil rights context, Title VII most prominently, that you don't have to plead a prima facie case. And we've also said that a prima facie case, at least in the context of ADA cases, includes what the essential functions of the job are. So help me navigate that. Because there has to be a factual, you don't have to put in the evidence. You don't have to attach the job description or your most recent evaluation or something that is a piece of evidence that would say what your functions are. But you have to have some allegations that in any case, I would think not just a government employee, but that you have a function that these are the functions that are your essential duties. You would have to say that, that you can perform them from home. And all he's saying here is making reference to the idea that he could perform them during COVID, basically. And I think that that was what the district court was saying. What are special projects in the days when offices have reopened? Is that something that... The complaint doesn't say what special projects. Is it referring to where they're done, how they're done? Right, that you have... I know what the counsel just said, but I did not see that in the complaint. No, there is no reference to what special projects are. Or to the idea that it doesn't involve any interaction with your colleagues at 1 Center Street that on your at-home days, maybe you answer emails. But can you do it? There has to be an allegation that you can do all your essential duties from home. I think that's the question that Judge Lowe is asking. Is what level of specificity is required for an allegation like that? Is it just, I can do the essential jobs? If I were to, I guess, if he were to indicate that there is, that these jobs are all online, that there's no interaction with anybody in an office, I guess that's what he'd have to... Before your time is up, would you just briefly address the New York City human rights law failure to accommodate claim? You heard from your friend that that is a very different standard. It is a different standard. And we do agree that if this court believes that the pleading raises an issue under that standard, that the court should dismiss it without prejudice, that claim... Here's part of the issue. And I might have this wrong in a lot of cases that I've had to review. But this is where Judge Preska seemed to conflate the standards. She seemed to use the same standard for the ADA, for the New York City human rights law, as she did for the ADA. If the court... Is that right, first of all? It certainly is a reading that you could make. And if the court thinks that Judge Preska did apply the ADA standard, then it would be reasonable in that case to sever that claim and dismiss that one without prejudice so that the state courts could construe what is really a continually evolving area of law in terms of construing the city human rights law. Isn't there diversity jurisdiction? Isn't there also diversity? So why would it have to be national diversity? I don't think there's diversity jurisdiction. You have a Staten Island resident who's a New York City employee. I thought there was... Yeah. Okay. Does the court have any further questions? In that case, we'll ask that the court affirm with that other caveat. Okay. We'll hear some rebuttal. Thank you. Two quick points. First one, Judge Lauderdale, Judge Preska did analyze the city human rights law claim under the ADA claim. There's no separate analysis. This court said that you have to make a complete separate analysis. And that's a completely different standard. The burden, it's not suitable on a motion to dismiss because the burden is on the defendants to prove that no accommodation would allow the plaintiff to perform his job functions. With regard to this pleading requirement as it pertains to Mr. Kangor's ability to perform his essential functions, there's two cases that I think the court should pay close attention. One is from this court, which is Crosby, which basically said that, and it's cited pretty extensively in our brief, that talks about that the allegations only have to be slim. They don't have to be nearly extensive. And that case was followed up by a district court decision, Miller v. Kendall, where the district court essentially said that the nature of a job's essential functions is fact-bound question ill-suited for resolution on a motion to dismiss. Let me ask you this. On a motion to dismiss, is your argument that I did my job during COVID remotely, is that enough at the motion to dismiss stage to get to discovery about whether or not I did my job during COVID remotely? Well, I think it is. But I don't think that's what we're saying, Judge Park. I think that when Judge Loy was quoting from paragraph 17 where it says, since COVID, we're not saying that because we could do it during COVID, you could necessarily do it post-COVID. What we're saying is that since COVID, remote work has become extraordinarily commonplace. And so the question, it's not that maybe the better word would have been after as opposed to saying since. But the fact is, is that we've all seen it, better or worse, there's lots of non-office work anymore. People don't want to come. A lot of people don't want to work from the office. Sometimes it's hard to hire people who want to come in five days a week. But that's neither here nor there for the purposes of a pleading. Most of the decisions that were relied upon by the district. So if you don't allege on the pleading issue, if you don't allege or describe what is a sign of service request or what is a special project, how can you then say I can do my central function? Because I don't think we have to at this stage. It doesn't even matter what it is. Here's the things. And that sounds like conclusory pleading. Well, I don't think it is conclusory. It would be conclusory if we just said we can do all of our functions. When we talk about the function and necessarily say. Well, that's what you say. Well, we're saying. So paragraph 17, all it says is he can perform all the functions. Maybe the problem is that you provided all the functions and you just. Maybe I should have said nothing. Maybe you over-alleged. But once you make certain allegations about what the essential functions are. And I'm not blaming you. I mean, I think it's actually quite valuable. To list the essential functions, in my view, although you may not be required to do that. But once you do that, then if you agree that just saying he can perform all the essential functions of the job is a, by itself, conclusory allegation, then you need to say a little bit more, particularly when you're able to focus on some of the essential functions but not the others. I understand your point. I respectfully disagree. I think that what we're required to do is say what the functions are. This is at the pleading stage. Summary judgment, whole nother world. But we need to say what they are and say that we can do them. What would be conclusory from my perspective would be merely saying he could do all of his job functions. Otherwise, what we're getting into in a complaint is something that's going to look like a book or an employee manual. There's no — we're not required to plead under Rule 9. In fact, under Rule 8, with the particularity of Rule 9, this is not — I mean, this is — I would concede this is not an easy question from a pleading standpoint. And Twombly and Iqbal don't really help us. I mean, I think they opened up more of a can of worms than they closed. But that's an arguable debate. But I think that once we say what the functions are and say that we can do them, we don't have to get into the nuts and bolts of specifically what they were. And that's particularly in this situation where he's testified — the complaint says he was doing them during COVID. Now, I agree the fact that — the fact that — We seem to have cut off that avenue, but — No, and I agree that that's not enough. In and of itself, that's not enough. The fact — COVID was a, you know, a unique circumstance in which, you know, employers modified what they were necessarily requiring from employees. But when you say, I was doing my essential functions remotely during that period of time, you're kind of crossing that line from conceivable to plausible because you actually did those things. It's not just saying, I did my job as they required during COVID, because that might have been less or more or not at all. But in this case, he's saying, I did these exact same things during that period. It shows that I could necessarily do it. Thank you very, very much.  Again, I apologize for my technological failure. Just don't let it happen again. Thank you very much. We'll reserve decision.